The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Neill Fuleihan. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as
STIPULATIONS
1. On the date of the alleged injury giving rise to this claim the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At such time, the employee-employer relationship existed between the plaintiff and defendant employer.
3. At such time, ITT Hartford Insurance Company was the carrier on the risk.
4. The date of the alleged injury by accident is December 15, 1990.
5. The medical records from Northwest Therapy, Davis Hospital, Drs. Bond, Bell, Adams and Griffin, and the vocational report from Gary Sigmon are received into evidence.
* * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. On December 15, 1990 plaintiff was employed as a boarder for defendant-employer, a textile products manufacturer. Plaintiff had been employed by defendant-employer since August 27, 1982.
2. On December 15, 1990 plaintiff was boarding cotton tights which required her to pull the cotton tights onto a board and then to pull the cotton tights back off the board. Boarding cotton tights was more difficult than boarding other product lines. Approximately one and one-half to two hours into her shift that morning, plaintiff was having difficulty boarding a pair of cotton tights. Plaintiff was "pulling down with everything I had, and all of a sudden, it just give, and I went down", at which time she experienced pain, burning and stinging in her low back and heard a "pop". Plaintiff was unable to straighten back up for several minutes. When she resumed her duties and pulled the same pair of cotton tights back off of the board, she experienced another sensation in her back. The incident of pulling the cotton tights onto the board and then pulling the cotton tights off of the board was contemporaneous with the onset of pain in plaintiff's low back and occurred during a cognizable time.
3. Plaintiff reported the incident to her supervisor, Robert Rhodes and to Barbara Chambers, who was secretary to Robert Rhodes' supervisor, Lamar Crews. An accident report was not prepared by Mr. Rhodes.
4. Following the incident, plaintiff worked the remaining three hours of her shift during which time she continued to experience pain in her lower back.
5. At the conclusion of her shift on December 15, 1990, plaintiff was pulling out of the parking lot when another vehicle traveling approximately 20 per miles per hour struck plaintiff's vehicle in the front left side causing it to turn clockwise approximately three to four feet and causing plaintiff to be jerked about within her vehicle. The auto accident resulted in plaintiff experiencing pain in her neck, head, left shoulder and arm and aggravated the symptoms of low back pain plaintiff was experiencing from the incident which occurred earlier that day while boarding tights.
6. On Monday, December 17, 1990 plaintiff went into work at which time she could hardly move due to the pain she was experiencing. She was sent to see Dr. Bond, the company physician. Plaintiff saw Dr. Bond's physician's assistant with complaints of pain in her left shoulder, left arm, head and lower back. Plaintiff reported a history of onset of low back pain following the incident which occurred while boarding tights at work on the morning of December 15, 1990 and the onset of left shoulder, left arm, and head pain and an increase in her already present low back pain following the accident which occurred upon leaving work on the same date. Plaintiff was treated conservatively and was prescribed bed rest for the next two weeks. Plaintiff was unable to work the first week, December 17, 1990 through 21 December 1990, and was not required to work the second week due to plant scheduling over the holidays. Plaintiff returned to Dr. Bond's office on December 27, 1990 at which time she was seen by Dr. Bond and was treated conservatively for cervical lumbar strain.
7. Plaintiff returned to work on December 31, 1990 and worked until May 11, 1991 during which time she experienced pain in her low back with intermittent radiation of pain into both legs. Plaintiff remained under Dr. Bond's care throughout this period of time.
8. On May 11, 1991 plaintiff was boarding a pair of cotton tights when she experienced an aggravation of her low back and leg pain. Thereafter, Dr. Bond took plaintiff out of work and continued conservative treatment. At Dr. Bond's direction plaintiff remained out of work until August 7, 1991, at which time she returned to work four hours a day. Plaintiff continued to work four hours per day through August 27, 1991 when she went back out of work at Dr. Bond's direction.
9. Plaintiff saw Dr. Adams on October 16, 1991 at which time she complained of pain, tightness, stiffness in the low back and radiation of pain into her right leg. Dr. Adams prescribed conservative treatment for lumbosacral strain with sciatica. Dr. Adams ordered diagnostic tests performed which revealed that plaintiff had a bulging disc on the right side at L4-5. Thereafter, plaintiff continued to see Dr. Adams, saw Dr. Bond on a couple of occasions and was seen by Drs. Bell, Watts and Rodger.
10. Dr. Adams released plaintiff to return to work on a four-hour per day basis beginning November 18, 1992. However, defendant-employer would not permit plaintiff to return to work on a limited duty basis contending that plaintiff's medical problems were related to the auto accident of December 15, 1990. Plaintiff remained out of work under Dr. Adams' direction until March 2, 1992 when, pursuant to her request, she was released by Dr. Adams to return to work. Plaintiff worked March 2, 3, and 4 and four hours on March 5, 1992 before being taken back out of work by the company nurse for a pulled left shoulder muscle.
11. Plaintiff returned to work on April 7, 1992 and worked until May 27, 1992 at which time plaintiff was terminated from her employment with defendant-employer for reasons unrelated to the workers' compensation claim which is the subject of this Opinion and Award.
12. Plaintiff continues to experience pain in her lower back which radiates down both legs intermittently for which she needs continuing medical treatment. Dr. Adams is in the best position to provide plaintiff's continued medical treatment.
13. On December 15, 1990 plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant employer, to wit: a disabling back injury which arose out of and in the course of her employment and which was the direct result of a specific traumatic incident of the work assigned.
14. The automobile accident which occurred on December 15, 1990, and the incident at work of May 11, 1991 while boarding tights, aggravated the injury by accident plaintiff sustained on December 15, 1990.
15. The medical care and treatment plaintiff received for her low back and radiating leg pain from Drs. Bond, Adams, Bell, Rodger and Watts, were necessary to effect a cure, give relief, or lessen plaintiff's disability from the December 15, 1990 injury by accident.
16. As a result of the December 15, 1990 injury by accident giving rise hereto, plaintiff was unable to earn any wages in any employment from December 17, 1990 through December 21, 1990, from May 12, 1991 to August 7, 1991, and from August 28, 1991 to March 2, 1992.
17. As a result of the December 15, 1990 injury by accident giving rise hereto, plaintiff was unable to earn the same wages she was earning at the time of the 15 December 1990 injury by accident giving rise hereto, from August 7, 1991 through August 27, 1991, during which time plaintiff worked four hours per day at $9.24 per hour for defendant-employer.
18. At the time of the December 15, 1990 injury by accident giving rise hereto, plaintiff earned $9.24 per hour and worked, on average, 40 hours per week plus overtime. Defendants submitted a Form 22 for the period May 21, 1990 to May 14, 1991 which provides an average weekly wage of $447.16 for this one year period and an average weekly wage of $505.40 for the period of time from May 21, 1990 to December 15, 1990. An average weekly wage based upon the plaintiff's earnings for the period of May 21, 1990 to May 14, 1991 is fairest to plaintiff and defendant-employer and would most nearly approximate the amount plaintiff would be earning were it not for her December 15, 1990 injury.
19. Plaintiff reached maximum medical improvement from her December 15, 1990 injury by accident, on March 2, 1993, at which time she retained a 15 percent permanent partial disability to her lumbar spine.
* * * * * * * * * * *
Based on the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On December 15, 1990 plaintiff's average weekly was $447.16 with a corresponding compensation rate of $298.12. G.S. § 97-2(5).
2. On December 15, 1990 Plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer by way of a disabling back injury which arose out of and in the course of her employment and which was the direct result of a specific traumatic incident of the work assigned; and as a result of the aforementioned injury was temporarily totally disabled from December 17, 1990 through December 21, 1990, May 12, 1990 to August 7, 1991 and August 28, 1991 to March 2, 1992, entitling her to compensation at the rate of $298.12 per week for the aforementioned period; and as a result of the aforementioned injury was temporarily partially disabled from August 7, 1991 through August 27, 1991 for which she is entitled to compensation at the rate of two-thirds of the difference between her average weekly wage on the date of the injury by accident giving rise hereto and her earnings during the aforementioned period. G.S. § 97-2(6); G.S. § 97-29; G.S. § 97-30.
3. As a result of her December 15, 1990 injury by accident, plaintiff sustained a 15 percent permanent partial disability to her back for which she is entitled to compensation at the rate of $298.12 per week for 45 weeks. G.S. § 97-31(23).
4. Plaintiff is entitled to payment of all medical treatment incurred, or to be incurred, as a result of the injury by accident of December 15, 1990. G.S. § 97-25.
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendants shall pay plaintiff, on account of her temporary total disability, compensation at the rate of $298.12 per week during the periods of time from December 17, 1990 through December 21, 1990, May 12, 1991 to August 7, 1991 and August 28, 1991 to March 2, 1992, and on account of her temporary partial disability, compensation at the rate of two-thirds of the difference between her average weekly wage on the date of injury by accident giving rise hereto and her earnings from August 7, 1991 through August 27, 1991. As said compensation has accrued it shall be paid in a lump sum, without commutation, subject to a reasonable attorney fee hereinafter approved.
2. Defendants shall pay plaintiff, on account of her permanent partial disability, compensation at the rate of $298.12 per week for 45 weeks. As said compensation has accrued it shall be paid in a lump sum, without commutation, subject to a reasonable attorney fee hereinafter approved.
3. A reasonable attorney fee in the amount of 25 percent of the compensation benefits due under the above Award is hereby approved, which amount shall be deducted from the accrued benefits due under the same Award and forwarded directly to plaintiff's counsel, Mr. Franklin Smith.
4. Defendants shall pay all medical expenses incurred, or to be incurred, by plaintiff as a result of the injury by accident of December 15, 1990, when bills for the same are submitted on the proper forms to the Industrial Commission for approval and thereafter approved by the Industrial Commission.
5. Defendants shall pay all costs, including an expert witness fee in the amount of $480.00 to Dr. Richard Adams.
FOR THE FULL COMMISSION
 S/ _______________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ _______________________ DIANNE C. SELLERS COMMISSIONER
S/ _______________________ THOMAS J. BOLCH COMMISSIONER
CMV/cnp/mj 6/21/95